UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION


BRIAN ISREAL, ET AL                          CIVIL ACTION NO. 06-cv-1999

VERSUS

RAEFORD FARMS OF LOUISIANA, LLC,      MAGISTRATE JUDGE HORNSBY
ET AL


**MEMORANDUM RULING**

**Introduction**

Plaintiffs in this collective action under the Fair Labor Standards Act ("FLSA") are employees at six chicken processing plants operated by various House of Raeford entities in Louisiana, North Carolina, and South Carolina. Plaintiffs allege, primarily, that Defendants have not compensated them for time spent donning and doffing protective gear and have not provided them a proper meal break.

Defendants filed a Motion for Partial Summary Judgment (Doc. 100) that argued the time spent donning and doffing protective gear in unionized plants operating under a collective-bargaining agreement ("CBA") was excluded from work time under the "changing clothes" exclusion of Section 3(o) of the FLSA, found at 29 U.S.C. § 203(o). Plaintiffs filed opposition (Doc. 118), and Defendants filed a reply (Doc. 125).

The parties attempted mediation, but they did not reach a settlement. In an effort to streamline a resolution of the case, the parties then agreed to waive a jury trial and have the matter referred to the undersigned pursuant to 28 U.S.C. § 636(c). The parties also agreed

to limit the court's initial consideration, for both summary judgment and trial purposes, to those claims related to two of the six plants: Arcadia, a union plant (addressed in the first Motion for Partial Summary Judgment) and Wallace, a non-union plant.  See Amended Case Management and Scheduling Plan at Doc. 152.

Defendants later filed a Second Motion for Partial Summary Judgment (Doc. 161) that challenged the merits of all claims related to the Arcadia and Wallace plants.  Plaintiffs filed an opposition (Doc. 165), and Defendants filed a reply (Doc. 182).  Plaintiffs also filed a Motion to Strike Summary Judgment Evidence (Doc. 168) that challenged the propriety of certain evidence regarding the time it takes for workers to don and doff their protective gear.

**Exclusion of Time Under Section 203(o)**

**A. Introduction**

Under the FLSA, employers must pay employees overtime compensation for hours worked in excess of 40 hours per week.  29 U.S.C. § 207(a)(1).  Under 29 U.S.C. § 203(o), the time spent changing clothes is to be excluded from the measured working time (for purposes of Section 207) if it has been excluded by the express terms of or by custom or practice under a  bona fide CBA applicable to the employee.[1]  This exemption has possible

---

[1]The statute provides: "Hours Worked - - In determining for the purposes of sections 206 and 207 of this title the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee."

application only with respect to the unionized Arcadia plant, which operated under a CBA.

Defendants concede that the CBA did not contain express terms about exclusion or compensation for time spent changing clothes.  Accordingly, the first issue with respect to the Section 203(o) exemption is whether the gear donned and doffed by the Arcadia employees falls within the meaning of "clothes."  If so, the next issue is whether changing clothes was excluded from work time by custom or practice under the CBA.

Production employees at Arcadia are paid "line time," which begins when the first chicken or product arrives at the first employee's work station on that line.  It ends when the last chicken passes the first employee's work station at the end of the shift.  Each employee on the line is expected to be at his station by the time the first chicken reaches his station, and leave when the last chicken passes his station.

There are four production departments at the Arcadia plant: live hang, evisceration, debone, and packing.  There are variations in required gear, depending on the department and an employee's position.  All production employees are required to wear boots that are worn from home, as well as smocks, a hairnet, beard net, and earplugs, all of which are picked up daily from the supply room.  Those employees who use knives and scissors are issued one durable, protective cutting glove for the non-cutting hand.  Some production employees choose to wear aprons and plastic sleeves, which are optional.  Some also choose, for reasons of comfort, to wear cotton gloves beneath the required rubber gloves.  At the end of the shift, employees remove their smocks and place them in bins for laundering.  They discard

disposable items such as hairnets and gloves in waste containers, and they either store in their lockers or take home reusable items such as aprons, sleeves, and cutting gloves. Some departments require employees to sanitize their gear before a shift and after a break.

### B. Clothes

Numerous cases have addressed the protective gear worn by meat packers and poultry processors in the context of the Section 203(o) exemption. The cases have not been consistent in their results. The Department of Labor ("DOL") has also taken different positions over the years in a number of interpretive rulings, the most recent of which was Interpretation No. 2010-2 issued on June 16, 2010.

There are any number of decisions and approaches the court could look to with respect to this issue, but this court must be mindful of the fact that it is in the Fifth Circuit. Another district court in this circuit faced a case filed by poultry processors who requested payment for time spent donning and doffing similar forms of protective gear. When the district court reached the Section 203(o) issue, it moved straight to the "custom and practice" issue with the apparent assumption that the gear at issue fell within the meaning of clothes. Anderson v. Pilgrim's Pride Corp., 147 F. Supp. 2d 556, 564-65 (E.D. Tex. 2001), aff'd, 44 Fed. Appx. 652 (5th Cir. 2002) ("We affirm for essentially the reasons stated by the careful opinion of Judge Hannah.").

The Fifth Circuit faced claims, in Bejil v. Ethicon, Inc., 269 F.3d 477 (5th Cir. 2001), by employees of a manufacturer of surgical sutures and needles. The employees sued for

compensation for time spent donning and doffing sanitary outer garments, hair covers, shoe covers, and similar gear.  The Court held that there had been a history of bargaining between the union and the employer over this issue, and a history of non-compensation for clothes changing before and after work.  By not incorporating compensation for clothes changing time, non-payment became the custom and practice, so it was exempt under Section 203(o).  The Court addressed in a footnote the plaintiffs' argument that the sanitary garments they wore were not "clothes" under the statute. The Fifth Circuit, referring to a dictionary definition of clothing but without discussion of the jurisprudence or DOL interpretations on the issue, labeled the plaintiffs' attempted distinction "nonsensical."

The Fifth Circuit, in <u>Allen v. McWane, Inc.</u>, 593 F.3d 449, 454 n.3 (5th Cir. 2010), described <u>Bejil</u> as a case in which it "determined that protective gear constitutes 'clothes' under § 203(o)."  The parties in <u>Allen</u> did not dispute that issue. This was consistent with a 2007 DOL interpretation that was then the most recent word from the agency.

In June 2010, about six months after <u>Allen</u> issued, the DOL issued Interpretation No. 2010-2, which included an interpretation of the term "clothes" in Section 203(o).  The DOL discussed its past interpretations, relevant legislative history, and relevant court decisions. The administrator stated in the interpretation that the exemption "does not extend to protective equipment worn by employees that is required by law, by the employer, or due to the nature of the job." The administrator acknowledged in footnote three of the interpretation that <u>Allen</u> (and other cases) had held that protective gear worn in poultry processing plants

is clothes under the statute.  The administrator stated that the rationale of <u>Allen</u> may not be consistent with the views expressed in the 2010 interpretation, and that the agency did not agree that all of the gear worn by the workers in <u>Allen</u> qualified as clothes. The administrator also observed that <u>Allen</u> and the other poultry cases were rendered in the context of lighter gear than the protective equipment encountered in the meat packing industry that had been the subject of prior opinion letters.

The Fifth Circuit has not addressed the issue since the DOL's most recent interpretation.  That interpretation is not controlling, but it may be entitled to some deference by reviewing courts, depending on the thoroughness of its consideration, the validity of its reasoning, and its consistency with earlier and later pronouncements.  <u>Skidmore v. Swift & Co.</u>, 65 S.Ct. 161 (1944).

The Sixth Circuit did address the 2010 DOL interpretation in <u>Franklin v. Kellogg Company</u>, 619 F.3d 604 (6th Cir. 2010).  The gear (hair and beard nets, goggles, earplugs, bump caps, etc.) worn by the employees at the Kellogg's frozen breakfast food plant was similar to the gear in this case.  The items provided covering for the body and also provided protection, but the court saw no reason to distinguish between protective and non-protective clothes (while recognizing that there could be some heavier protective equipment that would not be clothing within the meaning of the statute).  The Sixth Circuit agreed with the Fourth and Eleventh Circuits that the items "fit squarely" within the definition of clothes.  It recognized that the decision was at odds with the 2010 DOL interpretation, as well as

decisions from the Ninth Circuit and several district courts.  The Sixth Circuit faulted those court decisions for interpreting Section 203(o) as an affirmative defense to be narrowly construed against the employer.  It did not read the statute as a defense; the Fifth Circuit took that same position in Allen, 593 F.3d at 458-59.

This district court must be faithful to Fifth Circuit precedent.  The statements in Bejil and Allen, although brief, may not be ignored.  The DOL 2010 interpretive ruling has some logical force but, given the DOL's changing views over the years, the Fifth Circuit's prior decisions, and the sound rationale of Franklin, the undersigned finds that the protective gear at issue in this case is clothes within the meaning of Section 203(o).

### C. Custom or Practice

The next issue is whether there was a custom or practice under the Arcadia plant's CBA of excluding time spent changing clothes.  Plaintiffs argue that Section 203(o) is an affirmative defense for which Defendants have the burden of proof, but the Fifth Circuit's Allen decision (issued after Plaintiffs' brief was filed) held that the statute is not an affirmative defense.  Thus, the Allen plaintiffs "had the burden of proof as to whether or not a custom or practice under § 203(o) existed." Allen, 593 F.3d at 458.  Once the moving defendant satisfied its summary judgment burden, the employees had the burden of showing the clothes-changing did not fall into the activities the statute excludes from the definition of hours worked. Id.

Evidence submitted by Defendants shows that they purchased the Arcadia plant in 2000, and the union was already in place.  There were CBAs in force at the plant prior to Defendants' acquisition, but none of those three CBAs provided that workers would be paid for donning and doffing.  The most recent CBA, in effect from 2004 to 2008, is also silent on the issue.  Carolyn Grossman, the human resources manager at the plant, was involved in the negotiation but does not recall that the issue was discussed.

A custom or practice may be shown through the history of negotiations that produced the CBA.  In Bejil, the union raised the issue, the parties negotiated over the issue, and the union eventually withdrew its proposal.  The resulting CBA did not address compensation for changing clothes.  The Fifth Circuit held that not incorporating compensation into the CBA under those circumstances made non-payment the custom and practice.  Bejil, 269 F.3d at 480.  At the trial in Anderson v. Pilgrim's Pride, the employer produced evidence that, in 1993, the union proposed compensating line employees for time spent donning and doffing sanitary clothing, but the employer rejected the proposal and continued its policy of not compensating for the time.  The district court held in its 2001 decision that this had resulted in a practice for purposes of the statute.  Anderson, 147 F. Supp. 2d at 565.

But negotiations are not required to establish a custom or practice. The parties in Allen never negotiated the issue. The Fifth Circuit held "that even when negotiations never included the issue of non-compensation for changing time, a policy of non-compensation for changing time that has been in effect for a prolonged period of time, and that was in effect

at the time a CBA was executed, satisfies § 203(o)'s requirement of 'a custom or practice under a bona fide' CBA." <u>Allen</u>, 593 F.3d at 457.  As examples, it cited cases in which the policies had been in place for 10 and 30 years so that acquiescence of the employees could be inferred.  The employees in <u>Allen</u> had worked under the same non-compensation policy for 40 years, so the Court concluded that the defendant had demonstrated a custom of non-compensation for changing time.  The Court noted that where there are no relevant negotiations and the policy of non-compensation has not been in effect "for a prolonged period of time," other evidence of knowledge and acquiescence by the employees will be required.  <u>Id</u>.

    This case presents no evidence of negotiations.  It is not known whether the employees and their union representatives were aware of their legal rights under the FLSA, but they were obviously aware of the fact that they were not being compensated for the time. <u>See Allen</u>, 593 F.3d at 459 (noting that distinction).  These Defendants had about a nine-year history at the plant before this suit was filed, but the evidence suggests that the non-compensation policy applied as far back as 1991 (the date of the first CBA identified by Defendants), which is about 15 years before this suit was filed.  Plaintiffs have not pointed to any evidence that there was ever a different policy in the history of the Arcadia plant or cited any authority that would require ignoring the custom at the plant before Defendants purchased it.   The court finds, under these circumstances, that the policy of non-compensation was in place for a prolonged period of time. It is proper to grant summary

judgment for Defendants by holding that there was a custom or practice of non-compensation within the meaning of Section 203(o).

**Can Section 203(o) Clothes Changing Be a Principal Activity?**

Plaintiffs argue that the donning and doffing at issue in this case, no matter the outcome of the § 203(o) issue, are principal activities that trigger the commencement of their continuous workday and require compensation for all time between the first donning and the last doffing. This argument requires an exploration of the Portal-to-Portal Act and what activities are principal, as opposed to preliminary or post-liminary, and trigger the commencement of the compensable workday.

The FLSA does not define "work" or "workweek."  The Supreme Court defined the terms broadly in cases decided soon after the legislation was enacted.  In <u>Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123</u>, 64 S.Ct. 698 (1944) the Court held that time spent traveling from iron ore mine portals to underground working areas was compensable. Soon after, the Court held that the workweek included all time the employee is necessarily required to be on the employer's premises, on duty, or at a prescribed workplace.  That meant time spent by employees walking from time clocks near the factory entrance gate to their workstations had to be treated as part of the workweek.  <u>Anderson v. Mt. Clemens Pottery Co.</u>, 66 S.Ct. 1187 (1946).

Congress responded with the Portal-to-Portal Act, which amended the FLSA to eliminate the requirement of compensation for time spent walking or traveling to and from

the actual place of performance of the principal activity or activities of the employee and "activities which are preliminary to or post-liminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time of any particular workday at which he ceases, such principal activity or activities."  29 U.S.C. § 254(a). The DOL later adopted the continuous workday rule, which provides that "workday" as used in the Portal-to-Portal Act means, in general, "the period between the commencement and completion on the same workday of an employee's principal activity or activities."  29 C.F.R. § 790.6(b).

The Supreme Court applied the new law in Steiner v. Mitchell, 76 S.Ct. 330 (1956) when workers in a battery plant claimed compensation for time incident to changing clothes at the beginning of a shift and showering at the end.  These safety measures were necessitated by the dangerous caustic and toxic materials in the plant, as well as safety requirements of state law.  The Court stated that the term principal activity or activities in the Portal-to-Portal Act "embraces all activities which are an integral and indispensable part of the principal activities."  Steiner, 76 S.Ct. at 333-34.  Thus, "activities performed either before or after the regular work shift, on or off the production line, are compensable ... if those activities are an integral and indispensable part of the principal activities" of the employees.  Id. at 335. The Court stated that it would be difficult to conjure up an instance where changing clothes and showering were more clearly an integral and indispensable part of the employee's principal activity.

Plaintiffs argue that the donning and doffing at issue in this case are principal activities that trigger the commencement of their continuous workday.  An initial issue, at least with respect to the Arcadia plant, is whether changing clothes that is made non-compensable by Section 230(o) may remain a principal activity that starts the continuous workday.  The DOL stated in a 2007 opinion letter that Section 203(o) activities cannot be principal activities.  Some district courts agreed, but more courts rejected the opinion letter and held that even if changing clothes is not compensable because of Section 203(o) it may be a principal activity that triggers the continuous workday and makes subsequent acts such as walking, sanitizing, and waiting compensable.  The DOL revisited its opinion in the June 16, 2010 interpretation and concluded: "Consistent with the weight of authority it is the Administrator's interpretation that clothes changing covered by § 203(o) may be a principal activity."  The Sixth Circuit reviewed the issue in <u>Franklin</u>, 619 F.3d at 618-19 and reached the same decision.  The undersigned is in agreement.

**Are the Donning and Doffing In This Case Principal Activities?**

The next issue is whether donning and doffing the safety gear are integral and indispensable to the plaintiffs' work at the Arcadia and Wallace plants. Plaintiffs contend that the Supreme Court held in <u>IBP, Inc. v. Alvarez</u>, 126 S.Ct. 514 (2005) that donning and doffing gear are principal activities.  The decision did not go that far.

There were two groups of plaintiffs at issue in the consolidated case.  The first group was employed by the producer of beef and pork products.  They had to wear hairnets, gloves,

aprons, and other gear similar to that at issue in this case, as well a variety of protective equipment for certain employees who used knives or had more dangerous jobs.  The district court held after a bench trial that donning and doffing of protective gear unique to the job were compensable because they were integral and indispensable to the work, but the court did not allow any recovery for ordinary clothes changing or donning and doffing more generic gear such as hard hats, earplugs, safety glasses, boots, or hairnets.  The Court of Appeals held that donning and doffing even non-unique gear such as hard hats and goggles were integral and indispensable when required by law and for the benefit of the employer, but the time spent with that gear was considered *de minimis*. The employer did not challenge in the Supreme Court the holding below that donning and doffing non-unique protective gear were principal activities. Thus, "the only question" for the Supreme Court was whether walking between the locker rooms and production areas was excluded from FLSA coverage. Alvarez, 126 S.Ct. at 521-23.

The other group of plaintiffs in Alvarez worked at a poultry processing plant and required different combinations of protective clothing, depending on their jobs.  The district court held in a pretrial ruling that donning and doffing clothing and equipment required by the employer or the government were integral to the work, so they were not excluded from compensation.  The Supreme Court did not revisit that holding.  Its focus was on time spent waiting to don the first piece of gear and time spent walking between the donning/doffing area and the production floor.  Alvarez, 126 S.Ct. at 525-28. The Supreme Court's Alvarez

decision, therefore, did not announce any particular rule as to whether donning and doffing are principal activities or the applicable test for making that decision.

The DOL issued a Wage and Hour Advisory Memorandum No. 2006-2 to advise its staff on the state of the law after Alvarez.  One part of the memorandum addressed donning and doffing of non-unique gear.  It stated as follows:

> Donning and Doffing of "Nonunique" Gear in Processing Plants
>
> The Supreme Court in Alvarez did not rule directly on the compensability of donning and doffing of "nonunique" gear such as hairnets, goggles, hardhats and smocks, because it was conceded or the courts below held that donning and doffing of the gear at issue in these cases was a principal activity.  The Court, however, framed the issue to be decided as involving walking time after the donning of required gear "that the courts below found integral and indispensable to the employees' work." In Steiner, the Court held that changing into and out of old work clothes at a battery plant was an integral and indispensable part of the workers' principal activities, and therefore compensable.  And the regulation at 29 C.F.R. 790.8 n.65 provides that any clothes changing on the employer's premises, which is required by law, the employer, or the nature of the work is compensable. The Court in Alvarez ruled that the principles enunciated in Steiner were applicable to the cases before it, and endorsed the Secretary's regulations. Accordingly, whether required gear is "unique" or "non-unique" is irrelevant to whether donning and doffing is a principal activity.

The protective gear of poultry workers was at issue in the post-Alvarez case, De Asencio v. Tyson Foods, Inc., 500 F.3d 361 (3rd Cir. 2000). Workers were required to don and doff protective gear similar to that at issue here. Tyson made a pretrial waiver of any defense that the donning and doffing were not integral or indispensable, but it did argue that

donning and doffing did not amount to work under the FLSA.  The trial court charged the jury that work required physical or mental exertion, making it proper to consider whether the gear at issue was heavy or cumbersome, or lightweight and easy to put on or take off.  The jury returned a verdict for Tyson, but the Third Circuit reversed based on the jury instruction. It stated that it would be up to the district court to determine on remand the preclusive effect of Tyson's waiver of whether donning and doffing were integral or indispensable, but the court appeared to accept the possibility that the smock, hairnet, earplugs, safety glasses, gloves, and other "non-unique" gear could be found integral and indispensable to the work.

Some courts have held that donning and doffing generic or non-unique protective gear, even if required by the employer, are not principal activities. For example, the Second Circuit in Gorman v. Consolidated Edison Corp., 488 F.3d 586, 594 (2d Cir. 2007) held that donning and doffing protective gear (helmet, safety glasses, steel-toed boots) may be indispensable but are not integral to the principal activities of employees at a nuclear power plant. It distinguished Steiner because the environment of the battery plant at issue in that case was lethal so that the gear at issue was required to enter the work area.

Some courts do not share Gorman's strict approach and have interpreted Steiner less narrowly.  Those courts often look to three factors as relevant to the issue of whether an activity is integral and indispensable: (1) whether the activity is required by the employer, the law, or the nature of the work; (2) whether the activity is necessary for the employee to perform his or her duties; and (3) whether the activity primarily benefits the employer.  See

Franklin, 619 F.3d at 619-20; Bonilla v. Baker Concrete Constr., Inc., 487 F.3d 1340 (11th Cir. 2007); and Ballaris v. Wacker Siltronic Corp., 370 F.3d 901 (9th Cir. 2004).

Some courts have looked at these factors and concluded as a matter of law that donning and doffing activities are integral and indispensable under appropriate undisputed facts. See, e.g., Franklin, 619 F.3d at 620 (company-provided uniforms, hairnets, safety glasses, etc. worn at frozen breakfast food plant); Hoyt v. Ellsworth Co-op Creamery, 579 F.Supp. 2d 1132, 1140-41 (W.D. Wis. 2008) (sanitary/safety uniforms in dairy production facility); Cullen & Jordan v. IBP, Inc., 542 F.Supp. 2d 790, 807 (M.D. Tenn. 2008) (frocks, hard hats, hairnets, plus specialized gear for some employees, at beef and pork processing plant).

Other courts have found that issues of fact did not allow them to conclude as a matter of law that the donning and doffing activities were integral and indispensable to the work. See, e.g., Garcia v. Tyson Foods, Inc., ____ F.Supp. 2d ____, 2011 WL 346078, *8 (D. Kan. 2011) (typical protective clothing and gear at a beef processing plant) and Morales v. Farm Land Foods, Inc., 08-cv-0504 (D. Neb. 2010) (unpublished decision filed in this record at Doc. 208; standard protective clothing and gear worn by meat production workers).

Plaintiffs, in opposing the defense motion, argue that the court should rule in their favor on this issue (which is in essence a cross-motion for summary judgment). They argue that their protective clothing and gear are required by the employer and food safety regulations, are necessary to perform the duty of producing uncontaminated and clean poultry

products, and primarily benefit the employer because the protective clothing and gear allow the production of uncontaminated poultry.  Defendants respond that the clothing and gear, which are generic as opposed to unique,  also benefit the employees because they provide for their safety and comfort.

The record suggest that the clothing and gear are of vital importance to and federally mandated for the employer's mission of producing poultry that it can sell in the marketplace. But the record is not complete with respect to the health, safety, and comfort benefits the clothing and gear afford the employees. It is possible that those benefits are sufficient to make the items primarily benefit the employees rather than the employer. Under these circumstances, whether the donning and doffing at issue constitute principal activities that trigger the continuous workday would remain an issue for trial if the court were to apply the three-factor test to weigh the issue in the first instance.

However, the Fifth Circuit in Von Friewalde v. Boeing Aerospace Operations, Inc., 339 Fed. Appx. 448 (5th Cir. 2009) stated that it agreed with the Second Circuit decision in Gorman "that donning and doffing of generic protection gear such as safety glasses and hearing protection are, in any event, non-compensable, preliminary tasks under the Portal-to-Portal Act." Boeing, 339 Fed. Appx. at 454.  The Court allowed that matters such as checking specialized tools in and out of a crib, preparing a tool crib, and other activities were necessary to the workers' principal duties, so that they were compensable if they involved more than a *de minimis* amount of time.

The Fifth Circuit's decision in <u>Boeing</u> was unpublished, so it is not precedential.  <u>See</u> Fifth Circuit rule 47.5.4.  The same is true with respect to the unpublished affirmance of the district court decision in <u>Anderson</u> that the donning and doffing by poultry processors of items such as apron, smock, rubber gloves, rubber boots, hairnet, earplugs, and plastic sleeves were not integral and indispensable to their principal jobs. <u>Anderson</u>, 147 F.Supp. 2d at 563.  The opinions may be unpublished but must nonetheless be taken into consideration.  As discussed above, courts have taken different paths when assessing this issue, and no particular path appears to be extraordinarily more logical than the others or to have commanded a substantial majority of support.  Under these circumstances, where the law is not certain, the better course for this court is to follow the Fifth Circuit's decision in <u>Boeing</u> and find that the donning and doffing of the gear at issue in this case were not principal activities or compensable. There is certainly a logical force behind that determination, and following the rule will promote consistency of the law among the district courts within the Fifth Circuit.

Defendants have also raised a defense that the donning and doffing, even if the tasks were principal activities, involve only a *de minimis* amount of time. The court need not address that defense in light of the determination that the donning and doffing are not principal activities.  Plaintiffs filed a Motion to Strike Summary Judgment Evidence (Doc. 168), which attacks the timing evidence Defendants submitted in support of the

*de minimis* defense.  That motion will be denied as moot because the defense need not be addressed.

**Meal Periods**

Plaintiffs claim that they are entitled to compensation during their 30-minute meal periods because a significant portion of their time is used to don, doff, and sanitize at the beginning and end of the meal period.  Defendants move for summary judgment on these claims.  The DOL has enacted a regulation, 29 C.F.R. § 785.19, regarding meal periods.  It states:

> Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

A few courts have strictly applied the regulations's requirement that employees be "completely relieved from duty," but most courts have adopted a "predominant benefit" test to determine the compensability of meal periods.  Fair Labor Standards Act, p. 8-36 (Ellen C. Kearns, et al, 2nd Ed. 2010).  The Fifth Circuit adopted the predominant benefit approach in Bernard v. IBP, Inc., 154 F.3d 259, 264-65 (5th Cir. 1998).  The Court stated that the "critical question is whether the meal period is used predominantly or primarily for the

benefit of the employer or for the benefit of the employee." Id.  The employer bears the burden to show that the meal time qualifies for this exception from compensation.  Id.

Cases that find a meal period is compensable usually involve employees who are required to remain at their workstation, be on call for any issues that arise, or actually perform work-related tasks.  Examples include the maintenance employees at the meat processing plant in Bernard who were entitled to compensation when they were required to wear their radios and tools during lunch, could not leave the site, and had their lunch breaks interrupted frequently by work demands.  Similarly, correctional officers in AFSCME Local 889 v. Louisiana, 145 F.3d 280 (5th Cir. 1998) were entitled to compensation when they had to take meals at the prison cafeteria and respond to any inmate disturbances.

Plaintiffs do not present any evidence that they were required to dedicate any part of their meal period to processing poultry or tending to related work.  Their only complaint is that the brief times required at the beginning and end of their meal period to don, doff, or sanitize cut into the 30-minute period.

Plaintiffs were completely relieved from duty during their meal period, and the time was used predominantly for their benefit.  There was only minimal benefit to the employer by virtue of the employees donning their gear at the end of the period.  Defendants are entitled to summary judgment on this claim.  See Chao v. Tyson Foods, Inc., 568 F.Supp. 2d 1300, 1309-10 (N.D. Ala. 2008) (summary judgment granted to dismiss meal period claims

by poultry processing workers who are free to spend their meal periods as they wish, short of donning, doffing, and washing their protective gear).

**Conclusion**

Defendants' Motion for Partial Summary Judgment (Doc. 100) and Second Motion for Partial Summary judgment (Doc. 161) are granted as follows.  Plaintiffs employed at the Arcadia plant are not entitled to compensation for donning or doffing their safety clothing and gear because of a custom and practice under their CBA.  The donning and doffing are also not principal activities of the employees' work at the Arcadia or Wallace plants, so donning the protective gear does not commence the continuous workday.  Plaintiffs' Motion to Strike Summary Judgment Evidence (Doc. 168) is denied as moot.  Finally, Defendants are entitled to summary judgment on the meal periods claim.  These rulings resolve all claims asserted by the employees at the Arcadia and Wallace plants.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 28th day of March, 2011.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE